**ADDIE C. RICHARDSON, joined by her husband, JOSIAH RICHARD-SON, v. SAM HOLMAN.**

33 So. (2nd) 641                                    January Term, 1948
January 20, 1948                                            Division A
Rehearing denied February 24, 1948.

*Mabry, Reaves, Carlton, Anderson, Fields & Ward,* for appellants.

*Macfarlane, Ferguson, Allison & Kelly,* for appellee.

On June 24, 1910, Eugene Holtsinger, by warranty deed, conveyed to Tampa and Sulphur Springs Traction Company a certain described parcel of land, with the following reservation:

"Provided however, and this conveyance is made subject to and upon the express condition that should the party of the second part cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall *revert to and vest in the said Eugene Holtsinger and his heirs and assigns.*"

On December 26, 1910, Eugene Holtsinger and his wife, by warranty deed, conveyed to G. A. Henderson and Monroe C. Gaither, all of Government Lots 1-25-28. The description in this deed included the lands conveyed by Holtsinger to Tampa and Sulphur Springs Traction Company and contained the following reservation:

"This deed is made subject to a certain deed from the parties of the first part to the Tampa and Sulphur Springs Traction Company, a corporation, dated the 24th day of June, A. D. 1910, and recorded in Deed Book 128 on page 35 of the land records of Hillsborough County, State of Florida."

Sometime in 1945 or 1946, the Tampa and Sulphur Springs Traction Company, hereinafter referred to as the Traction Company, ceased to operate street cars and abandoned the property in question. The appellants have by mesne conveyance become successors in title to Henderson and Gaither, instituted suit in ejectment to recover title and possession of the premises. The appellee, as defendant, demurred to the declaration, his demurrer was sustained, the suit was dismissed and plaintiffs prosecuted this appeal.

As frequently occurs, the parties are not in accord as to what questions are brought up for determination. Appellants

urge two questions and appellee urges three, but in our view, they all turn on that of whether or not the reservation in the deed by Holtsinger to the Traction Company left any right of reverter in the grantor that he could assign and if so, did he assign it to Henderson and Gaither by the deed he executed to them.

Appellants contend that the reservation in the deed to the Traction Company created an estate in fee simple determinable, while appellee asserts that it created an estate upon condition subsequent. It seems to be admitted that if it creates an estate upon condition subsequent, the power reserved to terminate under the common law, was personal to the grantor and his heirs and was not assignable, while if it created a fee simple determinable, then there was the possibility of reverter which might or might not be assignable under the common law.

Appellee contends that whether or not a fee simple determinable or an estate upon condition subsequent is created, depends upon the words employed by the grantor in the conveying instrument. The words employed are of course a very important determining factor, at the same time words or phrases in isolation will not be permitted to defeat the purpose of the grantor when that may be unmistakably gleaned from the four corners of the instrument.

We do not think it essential to the disposition of the question here, to participate a discourse in semantics on the difference between a fee simple determinable and estate on condition subsequent, when a possibility of reverter is or is not alienable, or when a fee is qualifiied, what constitutes a nakid possibility, a conditional limitation, or any other uncertain interest in lands. These old common law concepts had much to do with conveyance in their day, but even in States like Florida, where the common law is in effect except as repealed or substituted by statute, many of them have become obsolete or have been set aside.

Some of the text books say, that the distinction between a fee simple determinable and an estate on condition subsequent, is that as to the former, the words creating it limit the continuation of the estate to the time preceding the happening of

the contingency, while in the latter, the words creating the condition do not originally limit the term, but merely permit its termination upon the happening of the contingency. The main difference is whether the estate automatically expires upon the occurrence of a stated event, whether the conveyor has the power to terminate it upon the happening of the event if he desires to do so.

Appellee reviews a great many cases from different jurisdictions to show that the reservation in the deed from Holtsinger to the Traction Company created an estate on condition subsequent which properly construed, left no assignable interest in the grantor, and being so, he contends that no right of reverter passed to appellants by virtue of having acquired their title through Henderson and Gaither.

A review of the cases cited in both briefs discloses that even under the common law, some of them hold that a possibility of reverter attached to a fee simple determinable and may be alienated, while others interpret the same rule to the contrary. Some of these cases hold that the rule in the United States is different because the reasons that actuated the common law rule have vanished. In our view, the sounder rule supported by Blackstone, Kent and a wealth of decisions is that the operation and effect of a deed depends less on artificial rules than it does on the application of common sense and sound equity to the object and purpose of the contract under review.

We do not think there is any escape from the conclusion that the reservation in the deed from Holsinger to the Traction Company withheld the possibility of reverter which materialized when the traction company ceased to use the lands for street railroad purposes. The words of reverter "The title to said property shall revert to and vest in the said Eugene Holtsinger and his heirs," could hardly be more conclusive as to his purpose. The record discloses that this deed conveyed a strip of land 222 feet long by 65 feet wide, and that six months later the second deed by the same grantor to Henderson and Gaither conveyed the same with other lands, subject to the reservation in the deed to the Traction Company.

Subject to the reservation in the deed to the traction company, the deed to Henderson and Gaither carried the usual covenants of warranty, seisin and possession, and we think vested in the grantees all of Holtsinger's title, including his right to reverter, preserved in the deed to the Traction Company. The language used in both deeds is not materially different from that used under similar circumstances, in conveying to Churches, schools, lodges and other institutions for benevolent or public purposes, and when not used for the purpose of the grant, the lands so conveyed have been held to revert.

As heretofore pointed out, the final test to determine whether the language in a deed creates an estate upon condition subsequent, or an estate in fee simple determinable, is whether the language used provides for automatic reverter when the determinating event takes place, or whether under the terms used, the grantor or his heirs were clothed with the right immediately to step in and declare a reverter. The language employed in the reservation in the deed to the traction company is consistent with, and we think sufficient to accomplish an automatic reverter.

In the latter holding we do not overlook appellee's contention supported by numerous authorities to the contrary, but we think that both the statutes and the philosophy of conveyancing in Florida, rule the point against him. We think the reservation in the deed to the transaction company contained a possibility of reverter to Holtsinger and that it materialized when the traction company ceased to use the lands for street railway purposes. It is also our view that Holtsinger parted with his right of reverter, including all other interest he had in the lands, when he executed the deed to Henderson and Gaither.

We are not unmindful of the fact that the case law is in hopeless conflict on the point of whether or not a possibility of reverter may be assigned. Some of this confusion arises from a muddled view as to what constitutes an estate upon conditions subsequent and what constitutes a fee simple determinable. Some of it arises on account of statutes affecting these concepts, some of it arises from confusing it with other

common law rules, and concepts. Notwithstanding the confusion, there is a line of well reasoned cases that supports the assignment of this and other uncertain interest in land. Hamilton v. City of Jackson, 157 Miss. 284. 127 So. 302; Caruthers v. Leonard, (Tex.) 254 S.W. 779; Juif v. Dillman, 287 Mich. 35. 282 N.W. 892; Battistone v. Banulski, 110 Conn. 267, 147 Atl. 820; American Law institutes restatement of the law of property.

The statutes of Florida abrogates many of these old feudal concepts and contemplates that any interest in land may be the subject of conveyance. Section 689.01, Florida Statutes 1941, provides that "No estate or interest of freehold, or for a term of more than one year, or an uncertain interest of, in, or out of any messuages, lands, tenements or hereditaments, shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the parties creating, making, granting, conveying, transferring or releasing such estates, interest for a term more than one year." Section 731.05, Florida Statutes 1941, and other statutes with reference to passing by will is of similar import, so it appears that in Florida all restraints on alienation have been removed. A possibility of reverter is an uncertain interest in land that may under our law be conveyed or devised, regardless of what the common law rule was.

The foregoing and other statutes are the product of a growing liberal philosophy in the matter of land conveyancing coupled with a purpose to shake off the old restrictions of the common law, such as livery of seisin and sale of pretended titles sometimes spoken of as maintenance. The latter has never had a place in the law of this country and our system of recording deeds rendered the former obsolete. Under the feudal system possession was an indispensible prerequisite to alienation, but at present the tendency is to permit one to alienate any interest in lands he may claim. It will be noted that our statute, among other things, permits the alienation of "hereditaments" which under the common law of England included lands and tenements, whether corporeal or incorporeal, real, personal or mixed.

In fine, the right of contract so rigidly canalized by the common law, has, by the constitution and statutes, been liberalized till at the present any citizen who is sui juris may enter into any contract that is not illegal, fraudulent, immoral or contrary to public policy. Under the common law a right of action, choses in action, future or contingent interests, possible and existing estates or interests, were not assignable, but all of these are now assignable by statute or in equity. In view of the law as thus reflected in this state, we see no escape from this conclusion.

It is accordingly our view that Holtsinger's deed to the traction company reserved a reversionary interest in the lands in question which he conveyed to Henderson and Gaither and they in turn assigned it to their successors in title. It follows that the order sustaining the demurrer to the declaration was erroneous.

Reversed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.

January Term, 1948

Division B